UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

---

In re:

| | |
|---|---|
| ROBERT S. EDMONDS and | Case No. 09-33033-jes |
| CAROL J. EDMONDS, | Chapter 13 |
| Debtors. | |

---

**TRUSTEE'S BRIEF IN SUPPORT OF OBJECTION
TO CONFIRMATION OF DEBTORS' CHAPTER 13 PLAN**

---

The Chapter 13 Trustee, Mary B. Grossman, submits this brief in support of her

Objection to Confirmation of the Debtors' Chapter 13 plan.

**I.    Background and Procedural Posture**

The Debtors filed a petition under Chapter 13 of the Bankruptcy Code on September

9, 2009. Approximately two weeks later, they converted their case to one under Chapter 7.

On December 18, 2009, the United States Trustee filed a Motion to Dismiss for abuse and the

case was ultimately reconverted to one under Chapter 13 on January 22, 2010.

The Debtors are above the median income level for the State of Wisconsin, earning a

total of approximately $130,000.00 per year.[1] Their major assets include their home, a rental

property, two retirement plans and two vehicles that are paid in full. All of the Debtor's

---

Drafted By:
Jack N. Zaharopoulos
Office of the Chapter 13 Trustee
740 North Plankinton Avenue, Suite 400
Milwaukee, WI  53203
T – (414) 271-3943/F – (414) 271-9344
jackz@chapter13milwaukee.com

---

[1] This amount is based on the Debtors' gross monthly income as reported on Schedule I, which is derived from both wages and rental income.

assets are exempt. In addition, the Debtors lease two separate vehicles for which they make monthly lease payments totaling $833.00. They are current on their mortgages related to both their residence and their rental property and their only scheduled debts consist of $118,365.96 in general unsecured debt. The total amount of general unsecured claims actually filed, however, is $97,153.65. According to the Debtors' Schedule F, approximately one-third of this debt stems from student loans and the remainder was incurred from credit/charge card purchases and a personal loan.

On February 19, 2010, the Debtors filed their original Chapter 13 plan. On February 24, 2010, they filed a Motion to Modify Plan and then a second Motion to Modify on April 5, 2010. The Trustee refers to all three documents herein as "the plan." The plan proposes a monthly payment to the Trustee of $615.00 and to pay an 18% dividend to all general unsecured creditors, except student loan creditors Great Lakes and the U.S. Department of Education, both of which are to be separately classified and paid a greater dividend over the five-year life of the plan. The plan requires the Trustee to distribute $312.81 of the $615.00 monthly plan payment to these two student loan creditors each month so that, as the plan states, the Debtors can "maintain payments to their student loans."[2] The remainder of the $615.00 monthly plan payment (i.e., $302.19) is to be distributed to other general unsecured creditors. In effect, this separate classification will allow for the Debtors' student loan creditors to be paid a dividend of 53% over the term of the plan while other general unsecured

---

[2] Specifically, the plan states that the debtor shall maintain monthly contractual student loan payments, which consist of principal and accrued interest, owed to Great Lakes and the U.S. Department of Education over the term of the plan, through the Trustee, at a rate of $133.47 and $179.34, respectively. These payments, over 60 months, amount to 53% of the total debt owed to these student loan creditors. This means that a total of $18,769.00 will be paid to these two creditors while other general unsecured creditors will receive a *pro rata* share of $17,488.00, or 18% of their claims.

creditors will receive just an 18% dividend of their claims.  Without this classification, all general unsecured creditors would receive a dividend of approximately 35%.[3]

On April 16, 2010, the Trustee objected to confirmation of the plan alleging that (1) it unfairly discriminates among unsecured creditors in violation of § 1322(b)(1) and (2) it proposes to provide for post-petition interest on the unsecured student loan claims even though all allowed claims are not being paid in full, contrary to § 1322(b)(10).  The Court scheduled a hearing on the Trustee's objection for May 25, 2010 and the Debtors filed a response to the Trustee's objection on May 19, 2010.  At the May 25, 2010 hearing, the Court heard arguments of counsel and ordered that a stipulated set of facts be filed by June 15, 2010, that the Trustee be allowed through and including July 12, 2010 to file a brief and that the Debtors be allowed through and including July 30, 2010 to file a responsive brief.  The parties filed a Stipulation of Facts on June 15, 2010 and the Trustee now submits this brief in support of her objection.  The issues before the Court are (1) whether the Debtors' Chapter 13 plan may separately classify and provide favorable treatment for the Debtors' long term student loan debt without violating the unfair discrimination requirements of § 1325(b)(1) and (2) whether the Debtors' plan violates § 1322(b)(10) because it proposes to pay post-petition interest even though all other claims are not being paid in full.

## II.      Burden of Proof

A Chapter 13 debtor has the burden of proving that the disputed requirements for confirmation of a plan have been satisfied once an interested party objects to confirmation. *In re Furlow*, 70 B.R. 973, 977-8 (Bankr. E.D. Penn. 1987) (finding that a debtor proposing a plan providing for discrimination among payment to creditors of the same class has the

---

[3] The Trustee's Objection to Confirmation projected that this dividend would be 32% instead of 35%.  Since the time the Trustee filed her Objection, however, the claims bar date has passed and the total amount of general unsecured claims actually filed is less than amount that the Debtors had scheduled.

3

burden of proving the rationale for the proposed discrimination) (citations omitted); *see* also David M. Holliday, Annotation, *Chapter 13 Plan that Separately Classifies Student Loan Debt as Unfair Discriminatory Treatment of Class of Unsecured Claims Under § 1322(b)(1) of the Bankruptcy Code*, 6 A.L.R. Fed. 2d 507 (2010) (recognizing that a Chapter 13 debtor has the burden of showing that the proposed plan complies with statutory confirmation requirements, including § 1322(b)(1), which prevents unfair discrimination between classes of general unsecured creditors). Once a party has objected and raised the issue of whether a plan unfairly discriminates, the debtor must persuade the court, by a preponderance of the evidence, that the proposed classification and treatment does not unfairly discriminate. *See* Holliday, 6 A.L.R. Fed. 2d 507.

### III. Argument

The Trustee asserts that the Debtors' plan unfairly discriminates among unsecured creditors in violation of § 1322(b)(1). Although § 1322(b)(5) provides for "the curing of any default within a reasonable time and maintenance of payments" related to certain long-term debts, this section must be read in conjunction with § 1322(b)(1), which prohibits classification resulting in unfair discrimination. The plan here separately classifies debts related to the Debtors' educational loans as long-term debts and proposes to treat those debts more favorably than other unsecured debts. While these educational loans are nondischargeable, they remain general unsecured debts and should be paid the same dividend as other claims of the same class. The Debtors have not established a sufficient reason for disparate treatment of those claims. Furthermore, the plan's proposal to "maintain payments to their student loans" violates § 1322(b)(1) since part of these payments to student loan

creditors will be applied to post-petition interest even though all other allowed claims will not be paid in full.

> **A. THE PLAN UNFAIRLY DISCRIMINATES AMONG GENERAL UNSECURED CREDITORS IN VIOLATION OF § 1322(b)(1) AND CANNOT BE CONFIRMED.**

The Debtors' reliance solely on § 1322(b)(5) as authority for a plan to provide favorable treatment to general unsecured debt related to long term student loans is misplaced. The statutes relevant to the issue before the Court include both §§ 1322(b)(1) and (b)(5) and, as such, both must be considered. These sections provide:

> **§ 1322 Contents of plan**
>
> . . .
>
> (b) Subject to subsections (a) and (c) of this section, the plan may-
>
> (1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims;
>
> . . .
>
> (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due . . ..

Because § 1322(b)(1) prohibits unfair discrimination between unsecured creditors, and because (b)(5) must be read in the context of § 1322(b) as a whole, maintenance of payments on long term unsecured debt is only permissible if the discrimination in favor of the long term debt is not "unfair." *Harding*, 423 B.R. 568, 574 (Bankr. S.D. Fla. 2010) (citations omitted). In other words, a debtor may use § 1322(b)(5) to maintain long-term student loan payments

through the plan as long as the test for unfair discrimination under § 1322(b)(1) is met. This is the majority view of courts that have considered this issue. *Id.* at 568; *In re Parrot*, 2009 Bankr. LEXIS 4196 (Bankr. E.D. Tenn. Dec. 29, 2009); *Labib-Kiyarash v. McDonald (In re Labib-Kiyarash),* 271 B.R. 189, 195 (B.A.P. 9th Cir. 2001). *In re Simmons,* 288 B.R. 737, 749 (Bankr. N.D. Tex. 2003); *In re Edwards*, 263 B.R. 690, 691 (Bankr. D.R.I. 2001); *In re Colley,* 260 B.R. 532, 537-41 (Bankr. M.D. Fla. 2000) (stating that a majority of courts give effect to both §§ 1322(b)(1) and (5) "by subjecting a plan that provides for 'cure and maintain' treatment of long-term student loans to 'unfair discrimination' scrutiny" (citations omitted)); *In re Williams*, 253 B.R. 220, 227-28 (Bankr. W.D. Tenn 2000); *In re Thibodeau*, 248 B.R. 699 (Bankr. D. Mass. 2000); *In re Coonce*, 213 B.R. 344, 346-49 (Bankr. S.D. Ill. 1997).

The Debtors unpersuasively argue in their response to the Trustee's objection that § 1322(b)(5) should be read independent of (b)(1). As support for their argument, they rely on a bankruptcy case from the Western District of Wisconsin, *In re Hanson*, 310 B.R. 131 (Bankr. W.D. Wis. 2004), and another bankruptcy case from this district, *In re Truss,* 404 B.R. 329 (Bankr. E.D. Wis. 2009). The former, however, is distinguishable since it dealt with the issue of whether Chapter 13 debtors could maintain payments to their student loan creditors outside of the Chapter 13 plan. 310 B.R. at 132. Here, the Debtors intend to pay their student loan claimants through payments from the Trustee to the detriment of other general unsecured creditors. The latter case falls within the minority group of decisions and the Trustee respectfully disagrees with its reasoning. In the *Truss* case, Judge McGarity found that, because § 1322(b)(5) provides "a bright line rule," it was unnecessary to turn to the analyses prescribed by the Seventh Circuit as to whether separate classification constitutes

6

"unfair discrimination." *Truss*, 404 B.R. at 333. The *Truss* court adopted the analysis used in by the *Hanson* court in coming to this conclusion. *Id.* at 332. The *Hanson* court reasoned that, since §§ 1322(b)(1) and (5) appeared to be in conflict with one another, statutory construction principles required that the "specific and clear" language of (b)(5) trumped "the more general terms" of (b)(1). *Id.* The Trustee's position is that § 1322(b)(5) is not so clear since, as Judge Lundin described it, there has been "a veritable stampede in the case law to approve the fairness of separate classification of long-term student loans for treatment under § 1322(b)(5)." Lundin, Keith M., *Chapter 13 Bankruptcy*, 3d. Ed. § 155.2 (2000 & Supp. 2004). If there were such a "bright line rule," so many cases grappling with the issue would not exist.

Furthermore, as succinctly explained in another bankruptcy court opinion issued subsequent to the *Truss* decision:

> . . . *Truss* engaged in very little discussion to support its conclusion [that § 1322(b)(5) trumps (b)(1)], merely stating with no case law support that "statutory construction principles" dictate such a result. (citation omitted). Interestingly, § 1322(b)(5) explicitly trumps (b)(2) by using the language "notwithstanding paragraph (2)." Congress presumably could have also explicitly trumped (b)(1) by using the language "notwithstanding paragraphs (1) & (2)" – but Congress did not do so.

*Harding*, at 423 B.R. at 572. The Ninth Circuit Bankruptcy Appellate Panel in *Labib-Kiyarash* also noted that Congress did not intend that § 1322(b)(5) should trump the nondiscrimination requirements of § 1322(b)(1). 271 B.R. at 195-96. There, the Ninth Circuit BAP recognized that these two sections are, instead, to be read together, stating:

> If Congress had intended to preclude § 1322(b)(5) from being read in conjunction with § 1322(b)(1), then it would have done so expressly. (citations omitted). We read §§ 1322(b)(1) and (b)(5) together, and we give effect to both sections. *See U.S. v. Trident Seafoods Corp.*, 92 F.3d 855, 862-63 (9th Cir. 1996) (statutory construction requires that statutes be read in harmony and not in conflict). Therefore, we adopt the majority

7

> view and hold that a debtor may use § 1322(b)(5) to maintain long-term student loan payments at the contract rate while curing any arrearage through the plan, provided that the debtor's plan satisfies the [] test for unfair discrimination under § 1322(b)(1).
>
> In applying the [test for unfair discrimination], a debtor has the burden of proving that separate classification does not unfairly discriminate against the other unsecured creditors. (citation omitted). We emphasize that in accordance with *Sperna* [173 B.R. 654 (9th Cir. BAP 1994)] the nondischargeable nature of the Loans is alone an insufficient basis for separately classifying the Loans. *Sperna,* 173 B.R. 654, 658. We also acknowledge tha the bankruptcy court has wide discretion in making this determination. *See Bently v. Boyajian (In re Bentley),* 266 B.R. 299, 234 (1st Cir. BAP 2001).

*Id.* As the Ninth Circuit BAP stated, §§ 1322(b)(1) and (5) are to be read in harmony.

This Court should follow the majority line of cases and adopt the analysis used by the Ninth Circuit BAP in *Labib-Kiyarash*. *Id.* The last payment on each of the Debtors' student loans at issue here comes due after the projected completion date of the plan. As such, under § 1322(b)(5), the plan may, and does, provide for the cure and maintenance of this long term debt. However, such a proposal must also pass muster under the unfair discrimination analysis required by § 1322(b)(1). The only way such an analysis would not apply would be if these claims were "for a consumer debt of the debtor[s] if an individual is liable on such consumer debt with the debtor[s] differently than other unsecured claims." § 1322(b)(1); *see also In re Smalberger*, 157 B.R. 472, 476 (Bankr. D. Or. 1993) (stating that "Congress could have specifically included student loans in § 1322(b)(1) as it did for co-debtor claims"). The Debtors have not asserted, nor have they presented any evidence, that these student loan debts are consumer debts subject to co-debtor liability; therefore, the Court must determine whether the Debtors' proposed plan to pay a greater dividend to their student loan creditors unfairly discriminates against their other general unsecured creditors.

The Seventh Circuit Court of Appeals laid out the unfair discrimination analysis required by § 1322(b)(1) in *In re Crawford*, 324 F.3d 539 (7th Cir. 2003). The Court of Appeals acknowledged that the Bankruptcy Code does not define "unfairly" in the context of § 1322(b)(1). *Id.* at 542; *see* also *Smalberger*, 157 B.R. at 475 (finding that "[b]y using the concept of 'fairness,' Congress has left this determination to the discretion of the court"). In *Crawford*, the court considered a Chapter 13 plan proposal to pay approximately 67% of a non-dischargeable debt owed to a county government while other general unsecured creditors were to receive nothing. *Crawford.* at 541. But for the preferred treatment of the county debt, each unsecured creditor, including the county, would receive a 32% dividend. *Id.* The court stated that:

> We conclude, at least provisionally, that this is one of those areas of
> the law in which it is not possible to do better than to instruct the first-
> line decision maker, the bankruptcy judge, to seek a result that is
> reasonable in light of the purposes of the relevant law, which in this
> case is Chapter 13 of the Bankruptcy Code; and to uphold his
> determination unless it is unreasonable (an abuse of discretion).

*Id.* The court went on to state that, while a Chapter 13 is voluntary, a debtor "may not use it to deny consideration of the legitimate interest of creditors in repayment." *Id.* (citations omitted). The court gave several examples of "substantial cases for a classification that will permit one creditor or class of creditors to be paid disproportionately to the rest…." *Id.* (citations omitted). One of those examples is a truck driver who files a Chapter 13 bankruptcy and one of his creditors is the state's drivers' licensing bureau which, if not paid in full, will revoke the debtor's driver's license. *Id.* at 543. In such a situation, "if without classification the debtor is unlikely to be able to fulfill the Chapter 13 plan and the result will be to make his creditors as a whole worse off than they would be with classification, then classification will be a win-win outcome." *Id.* (citations omitted).

9

The Seventh Circuit Court noted that, at the other end of the spectrum, however:

> is a nondischargeable debt consisting of a fine imposed, or restitution ordered, in respect of a criminal fraud that the Chapter 13 debtor committed, together with other unsecured debts, and he proposes a classification under which the nondischargeable debt will be paid in full and the other creditors will receive nothing at all. Approval of such a plan would be unreasonable.

*Id.* (citations omitted). The court acknowledged that "[t]he effect of the plan if approved in such a case would be to make the debtor's other unsecured creditors pay his fine or restitution!" *Id.* The court found that the proposal of the Chapter 13 plan before it, which provided for a greater dividend to be paid towards a nondischargeable general unsecured claim owed to the county, fell "closer to the second [example] and close enough to require [the court] to affirm its rejection." *Id.*

The facts in the case before this Court do not present a situation where the student loan claimants must be paid a higher dividend in order for the plan to succeed; there is no reason that the student loan creditors should fare better than other general unsecured creditors. It is worth again noting that the Debtors have the burden of proof and they must show the Court, by a preponderance of the evidence, that the plan's separate classification does not unfairly discriminate. *See* Holliday, 6 A.L.R. Fed. 2d 507. The Debtors have fallen far short of overcoming this burden. In fact, the Debtors have presented no evidence whatsoever to establish why the discrimination they propose is not unfair. It appears that the only basis for separately classifying the student loans is because these claims are nondischargeable. "The mere fact debts from student loans are not dischargeable is not sufficient basis for an exception to the plainly stated test of § 1322(b)(1)." *Simmons,* 288 B.R. at 748; *see also In re Tucker*, 150 B.R. 203, 204 (Bankr. N.D. Ohio 1992); *Williams*, 253 B.R. at 230 (collecting cases) (stating that "[i]n the clear majority of reported cases, the courts have concluded that

10

the nondischargeability of a student loan by itself is not enough to permit debtors to pay student loan loans in full while the other general unsecured creditors receive less than 100% of their claims."). Unlike the situation where a debtor is employed as a truck driver and must favor one certain unsecured claim in order to keep his job so that he can continue to earn income so his plan can succeed, the Debtors in the present case do not need to discriminate in favor of their student loan creditors in order to carryout their plan. In their response to the Trustee's objection, the Debtors characterize this as "an extreme example where classification might be found acceptable" and state that "[v]ery few debts will pass this kind of test." While both of these assertions by the Debtors may be true, the Seventh Circuit Court of Appeals presented the example of the truck driver whose plan proposes to pay a fine in full to assist other courts within its jurisdiction in determining whether discrimination among classes of creditors is unfair. It is not clear why the fact that instances of fair discrimination may not be common has any bearing on why the Seventh Circuit's guideline should not apply. Here, the facts are not such where the Debtors' proposed discrimination can be considered fair.

### B. THE PLAN VIOLATES § 1322(b)(10) SINCE IT PROPOSES TO PAY POST-PETITION INTEREST TO STUDENT LOAN CLAIMANTS EVEN THOUGH ALL ALLOWED CLAIMS WILL NOT BE PAID IN FULL.

Section 1322(b)(10) provides that a plan may:

> Provide for the payment of interest accruing after the date of the filing of the petition on unsecured claims that are nondischargeable under section 1328(a), except that such interest may be paid only to the extent that the debtor has disposable income available to pay such interest *after making provision for full payment of all allowed claims.*

(emphasis added). The plan here proposes that the Trustee maintain contractual payments, consisting of principal and interest, to two student loan creditors. Such payment clearly runs

11

afoul of the language of § 1322(b)(10) since post-petition interest on a nondischargeable unsecured claim may be paid only if the plan provides for payment of all other claims in full.[4]

### IV. Conclusion

Contrary to the Debtors' assertions, the Court must look beyond § 1322(b)(5) to determine whether the plan may pay student loan creditors a higher dividend than other general unsecured creditors. The Court must also consider § 322(b)(1) and evaluate whether the proposed discrimination is unfair. Here, the plan unfairly proposes to pay 53% of claims related to educational debt and 18% of other general unsecured claims. The facts do not suggest any argument for favoring student loan creditors over other general unsecured creditors. Rather, the Debtors' failure to provide any evidence, or even any explanation, for favorable treatment of student loan debts can only lead one to speculate that the Debtors' proposed treatment is based on the nondischargeable nature the student loan debt. Furthermore, the plan cannot be confirmed because it proposes to pay post-petition interest to a general unsecured claimant even though all other claims are not being paid in full, in violation of § 1322(b)(10).

Dated at Milwaukee, Wisconsin, this 12th day of July, 2010.

OFFICE OF CHAPTER 13 TRUSTEE

_____/s/_____
Jack N. Zaharopoulos, Staff Attorney

---

[4] It is worth noting that Judge McGarity briefly discussed the requirement of § 1322(b)(10) in an opinion issued shortly before *Truss*. *In re Zahringer*, 2008 Bankr. LEXIS 1770 at *15 (Bankr. E.D. Wis. May 30, 2008). There, the debtor proposed a Chapter 13 plan whereby he would pay his student loan payments outside of the plan and deduct those payments as a special circumstance on his Form B22C. *Id.* In denying confirmation based on the debtor's assertion that his student loan payments constituted a special circumstance, the court recognized that "direct payment, as opposed to payment through the plan, circumvents the provisions of § 1322(b)(10) of the Bankruptcy Code. This section provides that a plan can provide for interest payment on an unsecured debt only if the debtor has available disposable income and all other claims will be paid in full." *Id.*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

In re:

    ROBERT S. EDMONDS and                                 Case No. 09-33033-jes
    CAROL J. EDMONDS,                                        Chapter 13
                     Debtors.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of July, 2010, the **TRUSTEE'S BRIEF IN SUPPORT OF OBJECTION TO CONFIRMATION OF DEBTORS' CHAPTER 13 PLAN** in this case was electronically filed with the Clerk of Court and served upon the following parties using the ECF system:

        Office of the U.S. Trustee        James L. Miller, Esq.

I further certify that I have mailed by United States Postal Service the same document to the following non-ECF participant:

        Robert and Carol Edmonds
        3645 South Iowa Avenue
        St. Francis, WI 53235

                                                                             /s/

Dated: July 12, 2010                          _____
                                                       Jack N. Zaharopoulos
                                                       Office of the Chapter 13 Trustee
                                                       740 North Plankinton Avenue, Suite 400
                                                       Milwaukee, WI 53203
                                                       T: (414) 271-3943
                                                       F: (414) 271-9344

13