# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re:<br>    ROBERT S. EDMONDS  and<br>    CAROL J. EDMONDS<br>                         Debtors. | Case No. 09-33033-jes<br>Chapter 13 |

## DEBTORS' BRIEF IN RESPONSE TO TRUSTEE'S OBJECTION TO CONFIRMATION OF DEBTORS' CHAPTER 13 PLAN

Debtors, by and through their attorneys, Miller & Miller LLC, submit this Brief in Response to the Trustee's Objection to Confirmation of Debtors' Chapter 13 Plan.

### Issue Presented

Whether the Court may confirm a Chapter 13 Plan proposing to maintain contractual payments on long-term unsecured student loan debt, on which the last payment falls due after the completion of the plan, pursuant to 11 U.S.C. §1322(b)(5).

### Facts and Procedural Posture

Debtors originally filed a Chapter 13 case on September 9, 2009. The case was converted to Chapter 7, and converted back to Chapter 13 on January 22, 2010.  Debtors filed their Chapter 13 Plan on February 19, 2010 and two modified plans thereafter, on February 24, 2010 and April 5, 2010.  All three documents together comprise and are referred to here as the "plan". Debtors are above median income with three driving-age children and elderly parents they help support, in part by renting the non-homestead property they own to their parents. The exempt assets and vehicle debt discussed by the trustee in her Brief in Support of Objection to Confirmation of Debtors' Chapter 13 Plan (hereinafter the "brief") stem from this living arrangement and the fact that one of their vehicles is not running.

Debtors' Plan proposes to separately classify their student loan debt from other general unsecured debt for the purpose of maintaining contractual payments on that debt pursuant to 11 U.S.C. §1322 (b)(5). Debtors are current on their secured obligations and therefore plan payments will be used to pay unsecured creditors, who filed claims totaling $97,153.65. Student loan debt represents approximately 1/3 of this amount. The plan proposes that Debtors will pay $615/month to their Chapter 13 Plan, with $312.81 of that payment being the amount required to maintain contractual payments to student loan creditors Great Lakes and the U.S. Department of Education. The remainder of the monthly payment will be distributed to other unsecured creditors, attorney and trustee fees. These payments would result in the student loan creditors receiving a 53% dividend over the life of the plan and other general unsecured creditors receiving 18%. Without the separate classification, all general unsecured creditors would receive an approximate 35% dividend over the life of the plan.[1]

The Trustee objected to the plan based on the separate classification of the student loan creditors on April 16, 2010. Debtors filed a response on May 19, 2010. A preliminary hearing was held on May 25, 2010, where the court heard oral arguments from counsel and set a schedule for the parties to brief the issue prior to decision. Based on that schedule, the parties filed a Stipulation of Facts in Regard to Trustee's Objection to Confirmation of Debtors' Chapter 13 Plan on June 15, 2010, the Trustee filed a Brief in Support of Objection to Confirmation of Chapter 13 Plan on July 12, 2010, and Debtors now file this response.

Debtors agree with the Trustee that it is their burden to prove their plan meets statutory requirements for confirmation, but respectfully disagree that they must show their classification

---

[1] Percentages are taken from Stipulation of Facts In Regard To The Trustee's Objection To Confirmation Of Chapter 13 Plan filed June 15, 2010.

of long-term debt complies with a fairness analysis under 11 U.S.C. §1322 (b)(1). *See In re Furlow*, 70 B.R. 973, 977-8 (Bankr. E.D. Penn. 1987). Instead, Debtors argue they must only prove the loans they propose to separately classify are of the type specifically sanctioned by 11 U.S.C. §1322 (b)(5). The debtors did not present evidence that their plan's discrimination was fair because, as argued herein, there is no need to do so.

<u>**Arguments and Supporting Authorities**</u>

**A.    THE PLAN SHOULD BE CONFIRMED BECAUSE THE DISCRIMINATION IT PROPOSES STRICTLY COMPLIES WITH THE TERMS OF 11 U.S.C. §1322 (b)(5), AND THEREFORE NO FAIRNESS ANALYSIS IS NEEDED**

Whether Debtors' plan may be confirmed turns on statutory construction. Specifically, the question is how to evaluate classification of debt proposed pursuant to 11 U.S.C. §1322 (b)(5) in light of 11 U.S.C. §1322 (b)(1), and whether such evaluation must include an analysis of whether the classification results in "unfair discrimination" under section (b)(1).[2]

11 U.S.C. §1322 is entitled "Contents of Plan," and part (b) introduces a list of eleven permissible plan content types. 11 U.S.C. §1322(b)(1) permits classification of unsecured creditors so long as the plan does not "discriminate unfairly" among them, and section (b)(5) permits the maintenance of payments on long-term contractual debt, defined as debt where the

---

[2] The relevant Code section(s) reads as follows:
§1322 Contents of plan
…
(b) Subject to subsections (a) and (c) of this section, the plan may -
    (1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor different than other unsecured claims;
…
    (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due…

3

final contractual payment becomes due after the final payment to be made in the plan. *See In re Labib-Kirayash*, 271 B.R. 189, 193 (9th Cir. BAP 2001), *citing* 11 U.S.C. §1322 (b)(5). The Trustee argues that for a plan to be confirmed, classification among any type of unsecured creditors must pass a judicial test for fairness under 11 U.S.C. §1322 (b)(1). Specifically, the argument is that the 7th Circuit's guidelines as articulated in *In re Crawford* must be considered, and the proposed discrimination must be found "fair under those guidelines. 324 F.3d 539 (7th Cir. 2003). Debtors' position is that the only classifications that must pass a test for fairness under 11 U.S.C. §1322 (b)(1) are those classifications being proposed pursuant to section (b)(1), meaning those among unsecured creditors *not* having the specific characteristics required to use section (b)(5) (e.g. water bills, licensing bureaus). When debt sought to be classified is in strict compliance with the terms of 11 U.S.C. §1322(b)(5), it is expressly authorized by statute and is by definition not unfair, eliminating the need for any fairness test. *In re Truss*, 404 B.R. 329, 334 (Bankr. E.D. Wis. 2009). The argument is essentially that there is no need to look beyond the plain language of the statute, which lays out the exact characteristics of one type of properly classified unsecured debt. *See United States v. Ron Pair*, 489 U.S. 235, 240-241 (1989) ("Where a statute is coherent and consistent, there is no need for a court to inquire beyond the plain language of the statute."). The simplest reading of §1322 is the correct one: in a list of permissible content types, there is no reason to think that content falling under one type must also satisfy the requirements of another type. There is a split of authority on this issue, and the Trustee cites to a number of courts that have interpreted the statute to require a fairness test under 11 U.S.C. §1322 (b)(1) for classification pursuant to section (b)(5) to be permitted. *See In re Harding*, 423 B.R. 568, 574 (Bankr. S.D. Fla. 2010). But many courts have arrived at just the opposite conclusion, including cases in the Eastern

4

and Western Districts of Wisconsin. *See Truss*, 404 B.R. at 334. *See also In re Hanson*, 310 B.R. 131 (Bankr. W.D. Wis. 2004); *In re Machado*, 378 B.R. 14 (Bankr. D. Mass. 2007); *In re Chandler*, 210 B.R. 898 (Bankr. D.N.H. 1997); *In re Sullivan*, 195 B.R. 649 (Bankr. W.D. Tex. 1996); *In re Cox*, 186 B.R. 744 (Bankr. N.D. Fla. 1995); *In re Benner*, 156 B.R. 631 (Bankr.D.Minn.1993); *In re Saulter*, 133 B.R. 148 (Bankr. W.D. Mo. 1991).

Debtors rely on the above line of cases and the holding in *Truss*. 404 B.R. at 334. There, Chief Judge McGarity found 11 U.S.C. §1322 (b)(5) provided a "bright line rule" on its own and on its face, so the section (b)(1) fairness analysis articulated in *Crawford* need not be approached. *Id*. Earlier courts had arrived at this same conclusion. *See Cox*, 186 B.R. at 747 ("…it is unnecessary to engage in an analysis of these [fairness] factors, because 1322 (b)(5) prevents a finding of unfair discrimination as a matter of law."). *See also Saulter*, 133 B.R. at 150 (holding where final payment on student loan fell due after completion of plan, debt could be classified under section 1322(b)(5) without running afoul of §1322 (b)(1)). The *Truss* court compared section (b)(5) to other Code sections where the statute's plain language determines how a matter is to be treated in bankruptcy, such as the 90 day look back period for non-insider preferences and the 910 day requirement for cramming down vehicles, finding that in such instances, "judicial discretion as to fairness and equity do not come into play." *Truss*, 404 B.R. at 334. Turning to allowable Chapter 13 provisions, the court noted Congress' authorization for differential treatment of consumer claims involving co-debtors within 11 U.S.C. §1322 (b)(1). *Truss,* 404 B.R. at 334. The Trustee also concedes in her brief that no fairness analysis is required for these claims, but only because such treatment is mentioned within section (b)(1). Judge McGarity did not find this distinction critical, stating that the exception permitting maintenance on long-term debt "comes a little later in the statute, but still in the same

5

subsection," making it simply another category of code-sanctioned discrimination. *Truss,* 404 B.R. at 334. *See also Cox*, 156 B.R. at 746, *citing Benner*, 156 B.R. at 634 ("While this [treatment of student loan creditors] may be discriminatory it is not 'unfair' as defined by §1322(b)(1), because such treatment is specifically sanctioned by the bankruptcy code.") The Trustee's point that Debtors have not presented evidence their student loans are consumer debts subject to co-debtor liability is irrelevant; Debtors present no evidence because they do not argue their classification falls under this statutory exception but rather another exception for long-term contractual indebtedness under section (b)(5). "If the plan provides for the cure and maintenance of payments on a debt, the terms of which extend beyond the term of the plan, it is not for the court to determine whether this is fair to the other creditors or not. Such a provision is authorized by statute." *Truss*, 404 B.R. at 334.

Judge McGarity's determination in *Truss* relies on the analysis in *In re Hanson*. 310 B.R.131 (Bankr. W.D. Wis. 2004). The *Hanson* Court used 7th Circuit statutory construction rules to underscore prior decisions holding maintenance of student loan payments pursuant to section (b)(5) allowable without an independent fairness analysis. *Id*. at 133-4. Judge Martin began by reasoning that the varying tests for unfair discrimination among courts must at least mean not all discrimination can be found unfair. *Id*. at 133, *citations omitted*. Next, the court cited an earlier decision finding "…long-term student loan obligations with payment terms that extend beyond completion of the plan fall squarely within the ambit of section 1322 (b)(5)." *Id*. at 133, quoting *Benner*, 156 B.R. at 634 (Bankr. D. Minn. 1993). Using well-established rules of statutory construction, the court then continued:

> (f)alling within the ambit of 11 U.S.C. § 1322(b)(5) does not preclude the application of other statutory provisions. The treatment of long-term unsecured claims under 11 U.S.C. § 1322(b)(1) and 11 U.S.C. § 1322(b)(5) (in conjunction with each

6

other) appears to be in conflict with the uniformity of treatment generally required by 11 U.S.C. § 1322(b)(5) and is different from that proscribed in 11 U.S.C. § 1322(b)(1).... "The existence of a conflict is [a] prerequisite to deciding that a more specific statute prevails over one which is more general." *Squillacote v. U.S.*, 739 F.2d 1208, 1215 (7th Cir.1984). "Where there are two provisions in a statute, one of which is general and designed to apply to cases generally, and the other is particular and relates only to one case or subject within the scope of the general provision, then the particular provision must prevail; and if both cannot apply, the particular provision will be treated as an exception to the general provision." *Matter of Thornhill Way I*, 636 F.2d 1151, 1156 (7th Cir.1980). 11 U.S.C. § 1322(b)(5) is specific and clear in its language. 11 U.S.C. § 1322(b)(1) is more general in that it refers to all classes of unsecured claims, not to claims having specific characteristics. "[W]hen we are forced to choose between specific statutory provisions and a general ... [one], [a court will] err on the side of specific provisions in the belief that they reflect congressional intent more clearly." *Matter of Lifschultz FastFreight Corp.*, 63 F.3d 621, 629 (7th Cir.1995). "A specific statute takes precedence over a more general statute." *Matter of Johnson*, 787 F.2d 1179, 1181 (7th Cir.1986); *see also Central Commercial Co. v. C.I.R.*, 337 F.2d 387, 389 (7th Cir.1964). "11 U.S.C. § 1322(b)(5) would be rendered largely ineffective with respect to unsecured debt if student loans could not be treated thereunder..." *In re Benner*, 156 B.R. 631, 633-634 (Bankr.D.Minn.1993). So, where it applies, 11 U.S.C. § 1322(b)(5) trumps 11 U.S.C. § 1322(b)(1).

*Hanson*, 310 B.R. at 133-134.[3]  Judge Martin's statutory analysis is correct, logical and leads to the only result that explains the inclusion of both section (b)(1) and section (b)(5) in the statute, without rendering either one useless. Section (b)(1) applies to, and by its language creates, an equitable balancing test for all unsecured debt, regardless of its characteristics. Section (b)(5), on

---

[3] Judge Martin's analysis offers that specific statutes better reflect Congressional intent, and a previous decision suggested that Congressional objective was to allow debtors to take care of short-term obligations via a repayment program while maintaining long-term obligations with a minimum of disruption in Chapter 13. *Sullivan*, 195 B.R. at 658.  Maintaining long term obligations is a far cry from affording such creditors priority status under section 507(a), as some courts have suggested Congress would have done if it wanted student loans to have any preferential treatment.  See *McCullough v. Brown*, 162 B.R. 506, 513 (N.D. Ill. 1993).  Priority status typically results in a creditor being paid in full before other unsecured creditors even get a dividend.  With section (b)(5) there is a middle ground where the objective of maintaining long-term obligations can be met without the more drastic discrimination resulting from priority status.  1990's Student Loan Default Prevention Initiative Act, making student loans nondischargeable in Chapter 13, likely only strengthened this objective with respect to student loans.

7

the other hand, applies only to a limited group of unsecured debts, those with contractual payments extending past the plan's life. The approach advocated by the Trustee, which subjects all unsecured (b)(5) classification to a test for fairness under section (b)(1), would essentially write section (b)(5)'s treatment of unsecured debt out of the statute by rendering it superfluous; characteristics making an unsecured debt long-term would not allow Debtors to maintain payments on it, fairness of the classification under (b)(1) would.

Past decisions noted this fatal flaw in using the fairness analysis for unsecured debt treatment pursuant to section (b)(5). The *Chandler* court found:

> ...[1322(b)(1)] does not prevent discrimination. Rather, section 1322 (b)(1) prevents 'unfair' discrimination. The Court holds that placing unsecured creditors, like those holding student loans, into a separate class and permitting them debtors to maintain their payments to them at the full contract rate, as expressly permitted by section 1322(b)(5), is not 'unfair' discrimination. This must be the result intended by Congress; otherwise, how could a debtor's plan provide for the 'maintenance of payments' on 'unsecured' claims under section 1322(b)(5) if it were considered 'unfair discrimination' under 1322 (b)(1). In order to give meaning to both subsections, the Court finds that the discrimination proposed by the debtors in this case is not unfair.

*Chandler*, 210 B.R. at 904. Judge Martin's precise application of proper statutory construction, combined with the logic of previous decisions, whether the minority view or not, is the only formula that gives effect to both Code sections.

The Trustee relies on the Ninth Circuit Bankruptcy Appellate Panel's decision in *In re Labib-Kiyarash*, as well as the court's opinion in *In re Harding*, for support for the position that the only harmonious reading of the two relevant sections of §1322 requires classification of long-term debt under section (b)(5) to pass the relevant unfair discrimination test of (b)(1). 271 B.R. at 195; 423 B.R. 568, 574 (Bankr. S.D. Fla. 2010). Debtors respectfully disagree with the statutory analyses in these cases. The *Labib-Kiyarash* court determined that if Congress had meant to preclude section (b)(5) from being read in conjunction with (b)(1), it would have done

8

so expressly, perhaps by beginning (b)(5) with the phrase "notwithstanding paragraphs (1) and (2)" instead of just "notwithstanding paragraph (2)". *Labib-Kiyarash* 271 B.R. at 195. Debtors offer that such preclusion does not require this phrase, because there is nothing to "notwithstand" if classification under (b)(5) is already not unfair. As mentioned, the *Chandler* court found the only classification section (b)(1) prohibits is unfair discrimination, therefore, discrimination resulting from the applicability of another code section is not occurring in spite of section (b)(1) but is already harmonious with it. *Chandler*, 210 B.R. at 904. Section (b)(2), on the other hand, specifically prohibits the alteration of residential mortgage obligations and so (b)(5) must explicitly refer to it to override it.[4] Further, if section (b)(5) were written *only* to modify section (b)(2)'s principal residence clause, as the *Harding* court suggests, then why would it contain the language "on any **unsecured claim** or secured claim?" *(emphasis added)* "By its express terms section 1322 (b)(5) also applies to long-term unsecured debt." *Benner*, 156 B.R. at 633.

The Trustee also implies that *Hanson* is inapplicable since the Debtors there proposed to pay their student loans outside of the plan. It is unclear why this matters since the plan at issue in the trustee's lead case, *Labib-Kiyarash*, also proposed to pay student loans outside of the plan. 271 B.R. at 191. In *Hanson*, Judge Martin found no justification for paying student loans outside the plan, but this finding was not dispositive to his ruling or analysis of §1322. *Hanson*, 310 B.R. at 135. Further, the pitfalls described in the *Hanson* plan are avoided in Debtors' plan.

The Trustee does not argue that Debtors' student loan debts do not meet the criteria under 11 U.S.C. §1322(b)(5), she argues instead that this isn't enough. Debtors' student loan payments are ongoing, contractual payments such that the word "maintain" applies to them, and they are

---

[4] §1322(b)(2) provides that a plan may "modify the rights of holders of secured claims, other than a claim secured by a security interest in real property that is the debtor's principal residence,"...

9

defined as "long-term" by the Code since the last payment falls due after the Plan completes. This is all that need be true to classify the debt separately from other unsecured creditors so long as (b)(5) is offered as the basis. Debtors need not propose, and the court need not evaluate, Debtors' reasons for doing so, as the Trustee suggests. "As a matter of law, the maintenance of long-term debt obligations according to their terms does not result in 'unfair discrimination.'" *Sullivan*, 195 B.R. at 658. Debtors urge this Court to follow Judge McGarity's decision in *Truss,* as the most recent in a line of well-reasoned cases finding it improper to rewrite the statute to impose a further fairness test on classifications strictly complying with 11 U.S.C. §1322 (b)(5).

> **B.    MAINTENANCE OF PAYMENTS PURSUANT TO SECTION (b)(5) DOES NOT RUN AFOUL OF 1322(b)(10), AS SECTION (b)(5) TREATMENT DEMANDS PRE-FILING OBLIGATIONS REMAIN UNCHANGED.**

The Trustee contends that 11 U.S.C. §1322(b)(10) prevents the plan from maintaining Debtors' contractual payments on the student loans because they consist of both principal and interest.[5] Debtors' offer that this argument suffers the same flaw as the argument that section (b)(5) cannot be used without meeting a test under section (b)(1). 11 U.S.C. §1322 (b)(5) applies to a specific type of debt (long-term contractual), and explicitly states plans may *maintain* these payments, whatever they may be. The payments are therefore statutorily defined; they are not unfair under section (b)(1) and are not subject to the general prohibition against paying post-petition interest on nondischargeable debt unless all claims are paid in full. *See* 11 U.S.C. §1322(b)(10). In fact, a plan that proposes to change payments to long-term unsecured creditors while basing that separate classification on 11 U.S.C. §1322 (b)(5) cannot be confirmed. See *Hanson*, 310 B.R. at 134. "If the plan changes the (contractual) interest rate or monthly payment

---

[5] §1322 (b)(10) allows the plan to "provide for the payment of interest accruing after the date of the filing of the petition on unsecured claims that are nondischargeable under section 1328(a), except that such interest may be paid only to the extend that the debtor has disposable income available to pay such interest after making provision for full payment of all allowed claims,"

10

(on a student loan)...the debtor is not maintaining payments for the purposes of 11 U.S.C. §1322(b)(5)." *Hanson*, 310 B.R. at 134, citing *In re Javarone*, 181 B.R. 151 (Bankr. N.D.N.Y. 1995). Debtors' classification must meet the requirements of the more specific statute, 11 U.S.C. §1322 (b)(5), by keeping all aspects of the contractual payments, including the payments to interest, exactly as they would have been if Debtors had not filed, to avoid it being subject to the fairness analysis of (b)(1). *Id*. The *Hanson* court found the unchanged payment requirement essential to discrimination in favor of student loan creditors "in the manner condoned by 11 U.S.C. §1322 (b)(5)." *Id*. Again, why would section (b)(5) mention unsecured debt if it was impossible, because of other items in §1322(b)'s list, to propose a confirmable plan classifying unsecured debt on this basis? It is more logical to find that section (b)(10)'s application is more general than section (b)(5)'s, prohibiting post-petition interest payments on unsecured debts not meeting (b)(5)'s definition or on long-term debt not requiring interest payments before or during the plan. By statute, then, Debtors' plan does not violate §1322(b)(10) by paying student loan creditors the pre-filing amounts due. In fact, this makes the plan confirmable.

### C. IN THE ALTERNATIVE, IF THIS COURT FINDS A FAIRNESS ANALYSIS REQUIRED, DEBTORS' PLAN IS STILL CONFIRMABLE.

Debtors' position remains that a fairness analysis is not necessary, but offers the argument below to satisfy its burden or proof should this Court disagree with the conclusion reached by Judge McGarity and the previously mentioned courts.

In *Crawford*, the 7th Circuit's decision considering "unfair" discrimination, the court found a plan proposing to pay two-thirds of a nondischargeable child support debt and nothing to other unsecured creditors unfairly discriminatory under §1322(b)(1). *Crawford*, 324 F.3d at 541. There was no mention of §1322(b)(5) because that statute was not proposed the basis for the separate class. The court rejected tests for fair classification under (b)(1) other courts had

11

proposed on various grounds, concluding it could not come up with a good test either. *Id.* at 542. It determined only that the provisional test was to find the discrimination "reasonable in light of the purposes of...Chapter 13." *Id*. For clarity, the court then used hypothetical examples to illustrate its point. Examples of reasonable plans included a truck driver that proposed discrimination in favor of a licensing bureau to keep his job, and a debtor who proposed discrimination in favor of a bottled gas creditor to keep his home heated. *Id*. at 543. In using examples, however, the court did not make failure of the plan without classification the test for fairness. Rather, it used extreme hypotheticals to point out that some benefit must inure to creditors, not just the debtor, as a result of the classification. *Id.* at 542. More arguable classifications would presumably come in the form of real cases.

The trustee's brief cites Debtors' statement(s) that the truck driver example was extreme and that very few debts would pass a plan-fails-without-classification test, implying Debtors' concluded the 7th Circuit's test inapplicable on this basis. This is a misreading of Debtors' Response to the Trustee's Objection to Chapter 13 Plan (hereinafter "Response"). Rather, Debtors argued the examples were just that, examples, and that the court did not make plan viability the test for fairness, as the Trustee suggests ("Debtors in the present case do not need to discriminate in favor of their student loan creditor to carryout their plan.") Further, Debtors opined the overall difficulty in determining what unsecured debt classification should be found fair was likely why Congress carved out a specific exception for long-term debt in the first place.

Debtors may be able to maintain a plan that doesn't discriminate in favor of their student loans, but argue they are permitted to avail themselves of §1322 (b)(5)'s opportunity to emerge from bankruptcy without the additional interest accruing as a result of contractual payments not being maintained. (This is of course different that expecting to emerge free and clear of said

12

proposed on various grounds, concluding it could not come up with a good test either. *Id.* at 542. It determined only that the provisional test was to find the discrimination "reasonable in light of the purposes of...Chapter 13." *Id*. For clarity, the court then used hypothetical examples to illustrate its point. Examples of reasonable plans included a truck driver that proposed discrimination in favor of a licensing bureau to keep his job, and a debtor who proposed discrimination in favor of a bottled gas creditor to keep his home heated. *Id*. at 543. In using examples, however, the court did not make failure of the plan without classification the test for fairness. Rather, it used extreme hypotheticals to point out that some benefit must inure to creditors, not just the debtor, as a result of the classification. *Id.* at 542. More arguable classifications would presumably come in the form of real cases.

The trustee's brief cites Debtors' statement(s) that the truck driver example was extreme and that very few debts would pass a plan-fails-without-classification test, implying Debtors' concluded the 7th Circuit's test inapplicable on this basis. This is a misreading of Debtors' Response to the Trustee's Objection to Chapter 13 Plan (hereinafter "Response"). Rather, Debtors argued the examples were just that, examples, and that the court did not make plan viability the test for fairness, as the Trustee suggests ("Debtors in the present case do not need to discriminate in favor of their student loan creditor to carryout their plan.") Further, Debtors opined the overall difficulty in determining what unsecured debt classification should be found fair was likely why Congress carved out a specific exception for long-term debt in the first place.

Debtors may be able to maintain a plan that doesn't discriminate in favor of their student loans, but argue they are permitted to avail themselves of §1322 (b)(5)'s opportunity to emerge from bankruptcy without the additional interest accruing as a result of contractual payments not being maintained. (This is of course different that expecting to emerge free and clear of said

12

loans, discussed later in this section.) "To be sure, necessity may have a place in the analysis, but the fact that the debtor has the ability to formulate an alternative nondiscriminatory plan should not alone be sufficient to render it unfair." *McCullough v. Brown*, 162 B.R. 506, 510 (N. D. Ill. 1993). There is something in between failure of the plan without classification and arbitrary or unnecessary classification. The *Crawford* court itself labeled its examples "extreme" ends of a continuum. *Crawford,* 324 F.3d at 543. Because a plan proposing to pay child support debt at a great detriment to other unsecured creditors did not pass the fairness test does not necessarily mean the plan here does not.

Beyond creditors' legitimate interest in repayment, the *Crawford* court did not provide a list of factors to consider in determining whether plans proposing to fairly discriminate should be found reasonable. With respect to degrees of discrimination, the court rejected a test using a 20% rule for guidance, but this was because putting an actual numeric value on fairness was too "arbitrary." *Crawford*, 324 F. 3d. at 542, *citing Sullivan*, 195 B.R. at 656-7. (Classification resulting in a difference no more than 20% between what creditors would receive in the discriminatory plan and what they would receive absent the discrimination was per se fair.) The court was not was not, however, totally rejecting degree of discrimination as a fairness factor, a practice used in other circuits. See *In re Groves*, 39 F.3d 212, 215 (8th Cir. 1994) (plan proposing to accelerate student loan resulting in 100% payment during plan while other unsecured creditors receive 40% was too significant a difference to be found fair). The 7th Circuit's examples and discussion show that both type and degree are proper factors in the analysis. In its example of unfair discrimination, the court imagined a plan where restitution owed for criminal fraud was to be paid at 100% and other unsecured creditors were to receive nothing. *Crawford*, 324 F.3d at 544. This debt is in the nature of punishment and proposes an

13

all-or-nothing (100% vs. 0%) plan. The 7th Circuit further held that Mr. Crawford could propose a plan where discriminating in favor of the county would be considered fair, but that this particular plan, which proposed to shift ***two-thirds*** of Debtor's nondischargeable debt to the other creditors, was not reasonable. *Id.* at 543-4. *(emphasis added).* Clearly type and degree of discrimination contribute to fairness. Other courts evaluating degrees of discrimination have also noted it is a good indication of fairness if none of the disfavored creditors object to the plan. *See Machado,* 378 B.R. at 17. *See also In re Dodds*, 140 B.R. 542, 544 (Bankr. D. Mont. 1992). If the percentages were overly disparate, the creditors, not the Trustee, would have done so. *Machado*, 378 B.R. at 17.

In the plan before this Court, the type of debt is not in the nature of punishment, as is restitution, rather, it is financing for education. That education is at least somewhat responsible for Debtors' income, which is what maintains the Chapter 13 Plan. It is not required that the favored creditor have something to hold over Debtors' heads, like a license to drive, to constitute a benefit to the other creditors. Further, student loan creditors may consider Debtors in default if contractual payments are not maintained during the plan. This could hinder Debtors' chances for financing future schooling necessary for employment. While bankruptcy's fresh start is not without limits (debtors will still be responsible for a good portion of their student loans following discharge), it is unlikely that this separate adverse consequence was also intended. *See Sullivan*, 195 B.R. at 654 (Congress determined Debtors' fresh start not totally unfettered by making certain debts nondischargeable in Chapter 13.)

The plan before this court also contains comparatively low levels of discrimination in favor of the student loan creditors. With the proposed discrimination, general unsecured creditors would receive an 18% dividend. Without it, a 35% dividend. That is a differential of

14

17 percentage points between discriminating and not discriminating in the proposed payments. For comparative purposes, plans held to contain unfair discrimination have proposed differentials such as 32 percentage points (*Crawford*) and 27 percentage points (*Sullivan*). *See Crawford*, 324 F.3d at 541; *Sullivan,* 195 B.R. at 650. On the other end, fair plans have had differentials ranging from only 3 percentage points (*Machado*), up to 36 percentage points (the confirmed *Truss* plan). See *Machado*, 378 B.R. at 17; *Truss*, 404 B.R. at 334. Debtors' degree of discrimination, at 17 points different, is less than plans found unfairly discriminatory. Not one unsecured creditor has objected to the plan.

     A final note is that older case law considering the treatment of student loan debt in Chapter 13 dealt with discrimination based solely on nondischargeability or plans that proposed to accelerate student loan debt during its term; the Trustee's Brief contains references to some of these cases. *In re Williams*, 253 B.R. 220, 230 (Bankr. W.D. Tenn. 2000) (acceleration of student loan debt); *In re Smalberger*. 157 B.R. 472 (Bankr. D. Or. 1993) (nondischargeability offered as basis for separate classification); *In re Tucker*, 150 B.R. 203, 204 (Bankr. N.D. Ohio 1992) (nondischargeability offered as basis for separate classification). Because the plan at issue here neither bases the rationale for discrimination on the debt's nondischargeability nor proposes to accelerate the debt, such cases are inapplicable. *See Brief in Support of Confirmation of Plan* at 4, *Truss* (No. 59). Accelerating the debt kicks its classification out of the ambit of section (b)(5), leaving the plan to the fairness analysis and most likely, a huge disparity between percentage paid with the classification and percentage paid without. *See Hanson*, 310 B.R. at 134. See also *In re Saulter*, 133 B.R. 148, 149 (Bankr. W.D. Mo. 1991). (Debtor proposed to pay student loans in full and nothing to her unsecured creditors, essentially seeking to "exit bankruptcy free and clear of student loan liability at the expense of other creditors.") And the

15

Chandler court explicitly stated that when a plan proposed student loan debt be classified based on section (b)(5), rather than on its nondischargeability, the discrimination could be found fair. *Chandler*, 210 B.R. at 903-4. The Trustee argues that because Debtors gave no reason as to why they propose the discrimination, nondischageability must be the basis. As previously stated, it is the Code's own language Debtors offer as the basis, despite the fact that debts treated under section (b)(5) are likely to be nondischargeable. *See Chandler*, 210 B.R. 904. ("Although section 1322(b)(5) is not limited...to situations involving nondischargeable... debt...in reality only in cases involving student loans and marital debt will 1322(b)(5) be used, because a Chapter 13 debtor has no reason to 'cure and maintain' dischargeable debt.") Debtors here do not propose to accelerate their student loan debt or pay it in full at the expense of other creditors. They instead propose to use section (b)(5) properly to maintain contractual payments on it, resulting in their receipt of an acceptable slightly higher dividend than other unsecured creditors.

In summary, Debtors' plan proposes modest discrimination by degree, has received no objections from disfavored creditors, and has not altered payments to the student loan creditors. These factors along with the type of debt being favored are sufficient to find the discrimination fair under *Crawford*, even though this analysis is not required to confirm the plan.

## Conclusion

This court should not adopt the Trustee's position in favor of an over-complicated analysis that imposes a judicial test for fairness onto the plain language of a §1322 (b)(5). Rather, it should adopt the rationale culminating in *Truss* and holding discrimination in favor of student loan debt in compliance with §1322(b)(5) by definition fair. §1322 must be read as a whole, but that does not mean the addition of restrictions beyond those of the statute itself. The specific takes precedence over the general, therefore (b)(1)'s more general test for unfair

16

discrimination applies to classifications not meeting the section (b)(5) criteria. This approach is straightforward, giving independent meaning to both sections (b)(1) and (b)(5). Student loan debt is exactly the debt contemplated by the statute; the debt here is in strict compliance with section (b)(5)'s criteria. It is therefore proper to classify it on that basis without further analysis. Because strict compliance with section (b)(5) demands pre-filing obligations remain unchanged, section (b)(10) also does not bar confirmation. Finally, even if the Court finds additional fairness factors should be considered, the Plan's modest discrimination is not unfair. Accordingly, Debtors plan should be confirmed.

Respectfully submitted this 30th day of July, 2010 by

_____/s/_____
Ellen C. Fine #1052297
MILLER & MILLER, LLC, Attorneys for Debtor
735 W. Wisconsin Ave., Suite 600
Milwaukee, WI 53233
Phone: 414.277.7742
Fax: 414.277.1303

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WISCONSIN

In re:
    ROBERT S. EDMONDS and                      Case No. 09-33033-jes
    CAROL J. EDMONDS                               Chapter 13
                      Debtors.

## CERTIFICATE OF SERVICE

       I certify that on this 30th day of July, 2010, I electronically filed the DEBTORS' BRIEF IN RESPONSE TO TRUSTEE'S OBJECTION TO CONFIRMATION OF DEBTORS' CHAPTER 13 PLAN with the Clerk of Court and served a copy of the same upon the following parties:

| | |
|---|---|
| Office of the U.S. Trustee | (via ECF) |
| Mary B. Grossman, Chapter 13 Trustee | (via ECF) |
| Robert and Carol Edmonds<br>3645 South Iowa Avenue<br>St. Francis, WI 53235 | (via regular first-class mail) |

Dated: July 30th, 2010                          _____/s/_____
                                                              Ellen C. Fine
                                                              Miller & Miller LLC
                                                               735 W. Wisconsin Ave. Suite 600
                                                               Milwaukee, WI 53233
                                                               Phone: 414.277.7742
                                                               Fax: 414.277.1303

18

Case 09-33033-pp    Doc 57    Filed 07/30/10    Page 18 of 18