UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

In re:                                              Chapter 13

ROBERT S. EDMONDS and
CAROL J. EDMONDS,                                   Case No. 09-33033-jes

    Debtors.

DECISION

The above-named debtors have proposed a chapter 13 plan which separately classifies their student loan debts. The chapter 13 trustee (hereafter "trustee") has objected to confirmation of this plan. The parties have submitted a stipulation of facts and briefs. The issues involved are as follows:

1. (a) Whether debtors' proposed plan, which separately classifies the debtors' long-term student loan debts from the other unsecured debts pursuant to 11 U.S.C. § 1322(b)(5), is exempt from the unfair discrimination standard set forth in 11 U.S.C. § 1322(b)(1)?
   (b) If the student loan debts are not exempt from 11 U.S.C. § 1322(b)(5), whether debtor's proposed plan unfairly discriminates in favor of the student loan creditors?

2. Whether debtors' proposed plan, which provides for the payment of post-petition interest on the student loan debts but not on the other unsecured claims, violates 11 U.S.C. § 1322(b)(10)?[1]

---

[1] The key provisions under § 1322(b) which are involved in this case consist of the following:

§ 1322 Contents of plan
- - -
(b) Subject to subsections (a) and (c) of this section, the plan may–

(1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims;

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

## PROCEDURAL AND FACTUAL BACKGROUND

The debtors filed a chapter 13 petition on September 9, 2009, which was subsequently converted by the debtors to chapter 7 on September 25, 2009. On January 21, 2010, the debtors and the United States Trustee entered into a stipulation which resulted in this case being converted back to chapter 13.

The debtors' proposed plan before this court is a second modified plan filed on April 5, 2010. It proposes to treat the debtors' student loan debts (collectively totaling $35,231.51[2]) as a separate class of unsecured creditors. The plan requires the trustee to pay monthly payments consisting of principal and interest equal to the contract rate as follows:

    1.    $133.17 per month to Great Lakes Higher Education Guaranty Corp. (obligation of debtor-Carol Edmonds),

    2.    $89.67 per month to U.S. Department of Education (obligation of debtor-Carol Edmonds), and

    3.    $89.67 per month to U.S. Department of Education (obligation of debtor-Robert Edmonds).

---

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due . . . .

---

(10) provide for the payment of interest accruing after the date of the filing of the petition on unsecured claims that are nondischargeable under section 1328(a), except that such interest may be paid only to the extent that the debtor has disposable income available to pay such interest after making provision for full payment of all allowed claims . . . .

[2] Although the plan states that the obligation for all of the student loans totals $35,231.51, according to the proofs of claim filed, this total is actually $29,555.87.

On April 16, 2010, the trustee filed an objection to confirmation of debtors' plan. If debtors' proposed plan is confirmed, it will result in the unsecured student loan creditors receiving approximately a 53% dividend and the other unsecured creditors receiving approximately an 18% dividend. On the other hand, if this proposed plan is not approved and the student loan creditors are included in the same class as the other unsecured creditors, the estimated dividend to all of these creditors would be approximately 28%.

## PARTIES' POSITIONS

The trustee asserts that §§ 1322(b)(1) and 1322(b)(5) must be read in conjunction with each other and that the proposed separate classification of the student loans constitutes unfair discrimination in light of the difference in the estimated dividend to be paid to the student loan creditors and to other unsecured creditors. The trustee further contends that there is no justification for to separately classifying the student loans and so the plan as proposed is not confirmable.

The debtors submit that § 1322(b)(5) is the only provision that this court should consider because § 1322(b)(5), the provision applying to long-term student loan debts, is more specific, and trumps the general unfair discrimination language contained in § 1322(b)(1). The debtors therefore contend that their plan as proposed strictly complies with the plain language of §1322(b) and should be confirmed.

## ANALYSIS

The issue of whether a plan which separately classifies student loans must comply with the requirement that it not unfairly discriminate against the other general unsecured creditors is one in which bankruptcy court's are sharply divided. The majority of courts who have decided this issue support the trustee and hold that §§ 1322(b)(1) and 1322(b)(5) must be read in conjunction

with one another.

Judge Meyers, in In re Coonce, 213 B.R. 344 (Bankr. S.D. Ill. 1997), discussed the interplay between §§ 1322(b)(1) and 1322(b)(5) and declared that any interpretation which would treat § 1322(b)(5) as a stand-alone provision immune from the prohibition of unfair discrimination would render § 1322(b)(1) superfluous and that it is not within the Congressional intent.

Judge Olson reached the same conclusion in In re Harding, 423 B.R. 568, 571 (Bankr. S.D. Fla. 2010) when he stated that "§ 1322(b)(5) cannot be read in isolation and that the entire section of 1322(b) – including both § 1322(b)(1) and § 1322(b)(5) – must be read collectively." The court reasoned that § 1322(b)(5), by its use of the language "notwithstanding paragraph (2)" and by omitting any reference to paragraph (5), meant that § 1322(b)(5) was not trumped and that the sections must be read together.

Similarly, Judge Yacos in In re Chandler, 210 B.R. 898, 903-04, (Bankr. D. N.H. 1997) stated the following:

> . . . the Court finds that section 1322(b)(5) must be applied consistently with section 1322(b)(1), which requires that a plan "not discriminate unfairly against any class so designated" as an unsecured creditor class. If Congress had wanted courts not to consider whether putting unsecured creditors in a separate class and providing for full monthly payments on the unsecured creditors' claims during the course of the plan constituted unfair discrimination, Congress would have drafted section 1322(b)(5) to read "notwithstanding paragraphs (1) and (2) of this subsection, [a plan may] provide for the curing of any default . . . and maintenance of payments . . . ." Congress did not draft the statute in such a manner.

See also In re Thibodeau, 248 B.R. 699 (Bankr. D. Mass. 2000) and In re Caruso, 2001 WL 34076052 (Bankr. C.D. Ill.) ("notwithstanding § 1322(b)(5), a debtor's plan must still clear the

§ 1322(b)(1) hurdle of unfair discrimination").

There is, however, a respectable body of legal precedent for the minority view on this issue, including In re Truss, 404 B.R. 329 (Bankr. E.D. Wis. 2009), In re Hanson, 310 B.R. 131 (Bankr. W.D. Wis. 2004), In re Cox, 186 B.R. 744 (Bankr. N.D. Fla. 1995), and In re Benner, 156 B.R. 631 (Bankr. D. Minn. 1993). Two of these decisions were decided by this court's colleagues; Truss by Judge McGarity and Hanson by Judge Martin.

In Truss, Judge McGarity declared that § 1322(b)(5) provides a "bright line rule." and held that a court need not resort to general considerations of whether or not the result constitutes unfair discrimination. She reached this result based upon the language in § 1322(b)(5), and stated that § 1322(b)(5), unlike § 1322(b)(1), does not contain any language dealing with unfair discrimination. Judge McGarity joined with Judge Martin, who in Hanson, stated that: "[w]here there are two provisions in a statute, one of which is general and designed to apply to cases generally, and the other is particular and relates only to one case or subject within the scope of the general provision, then the particular provision must prevail[.]" (quoting from Squillacote v. U.S., 739 F.2d 1208, 1215 (7th Cir. 1984)). Judge Martin concluded by saying that § 1322(b)(5) was specific and § 1322(b)(1) was general and found that § 1322(b)(5) trumped § 1322(b)(1).

With all due respect to the decisions reached by this court's distinguished colleagues, this court is persuaded by and joins in the majority view holding that §§ 1322(b)(1) and 1322(b)(5) are to be read in conjunction with each other.

The Code does not provide any definition of what constitutes unfair discrimination. Unfair discrimination must be evaluated on a case-by-case basis. See In re Crawford, 324 F.3d 539 (7th Cir. 2003). Courts often look to the following four factors in determining whether separate class

-5-

Case 09-33033-svk   Doc 66   Filed 11/05/10   Page 5 of 7

treatment is fair:

1. whether the discrimination has a reasonable basis,

2. whether the debtor can carry out a plan without such discrimination,

3. whether such classification is proposed in good faith, and

4. whether the degree of discrimination is related to the basis or rationale for the discrimination.

See In re Potgieter, 436 B.R. 739 (Bankr. M.D. Fla. 2010).

The burden of proof is upon the debtors, as the plan proponents, to prove all of the elements of a confirmable plan.

This court is not of the view that long-term student loans can *never* be separately classified. However, based upon the facts and circumstances of this case, and after reviewing each of the four above-mentioned factors, the court reaches the conclusion that the plan as proposed does discriminate against the other general unsecured creditors with claims. The debtors are fully employed. Robert Edmonds is an equipment operator for the City of St. Francis, with over 8 ½ years of employment and earning gross wages of approximately $5,000 per month. His wife, Carol Edmonds, is a court administrator for the City of Greenfield, who has been gainfully employed in that capacity for over 7 ½ years and who earns approximately $3,500 per month. In addition, the debtors receive $1,360 per month income from rental property. Their combined total annual income is approximately $130,000. There is nothing in the case at bar which establishes that the debtors are unable to formulate a plan that provides for equal treatment of unsecured creditors. Student loan debts should not be paid at the expense of the other general unsecured creditors.

The court further concludes that the debtors' proposed plan which provides for post-

Case 09-33033-svk   Doc 66   Filed 11/05/10   Page 6 of 7

petition interest on the student loan debts violates § 1322(b)(10) of the Bankruptcy Code. Sec. 1322(b)(10), which was enacted as part of the 2005 amendments to the Bankruptcy Code, declares that post-petition interest cannot be paid unless the plan provides that of all of the unsecured creditors will be fully paid. Sec. 1322(b)(10) is very clear in its wording. The debtors' proposed plan does not pay all creditors in full. Accordingly, post-petition interest may not be paid on the debtors' student loan debt.

## CONCLUSION

Based upon the foregoing, this court concludes that pursuant to 11 U.S.C. § 1322(b)(1), the debtors' proposed plan unfairly discriminates in favor of the student loan creditors and and against the other unsecured creditors in this case. As such, the proposed plan cannot be confirmed and the trustee's objection to confirmation is sustained. This is without prejudice to the right of the debtors to file a further amended plan.

This decision constitutes the court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. The court shall enter a separate order.

Dated at Milwaukee, Wisconsin, this 5th day of November, 2010.

BY THE COURT:

*[signature]*
JAMES E. SHAPIRO
U.S. BANKRUPTCY JUDGE